The District Court's summary judgment of invalidity in this case should be reversed. Claims 2 and 3 of this patent are for computer-implemented inventions, not abstract ideas. Claim 3 is a computer-implemented invention? It requires a transaction over the Internet, and that requires hardware and software and a host of other things. If you also look at the steps that are performed in the light of the specification, they are also performed in software as well. Well, but to some extent that's data-gathering steps, right? Which are not something that makes it 101 eligible. Your Honor, I disagree that this is simply data-gathering, at least the way that term has been used in previous cases. This invention really exists because of a problem created by the Internet, and the solution is created by the Internet. So to call that data-gathering really doesn't make sense. But you're not claiming the creation of the original database. That's not part of this invention, right? No, it's not. The database is not claimed per se as creating the database. But the steps require obtaining that information from other transactions that have used the same IP address. You said when you began that the claim required a transaction over the Internet, but the claim says a method for verifying the validity of a credit card transaction over the Internet. The predicate is the credit card transaction. The method consists just of obtaining information about other transactions, constructing a map of credit card numbers, and utilizing the map to determine if the credit card transaction is valid. I could do that by hand, could I not? In other words, if I got information about credit card transactions over the Internet, I don't have to use a computer to perform each of the steps of this method, do I? Well, Your Honor, in view of the specification, it's pretty clear that what's going on here, there's a controller, there are processors, there's a database. That's typically going to be the way it's going to be done, I suppose, because for me to do it personally by hand is going to be cumbersome. But the claim doesn't require a computer, is that right? Well, it does because as a predicate, there has to be a transaction over the Internet. Yeah, but I don't have to use a computer to perform this method. All I have to do is to take information that I've gotten based on a transaction that went on over the Internet, right? I don't think so. I don't think this involves mental processes or mental steps. Well, suppose that we were to hold that the data gathering aspect of this doesn't confer patentability, and you say you're not claiming the creation of the database in the beginning. Yes. So, the information as to this particular credit card and the locations that are given in connection with it is collected. Let's assume that none of that is, none of that collection process makes it 101 eligible. Isn't Judge Bryson correct, then, that the rest of it could be done mentally or using a patent paper? It doesn't require a computer to analyze this. In fact, the origin of this was realizing that it could be done without a computer. I don't think that's really a fair characterization of the invention in light of the specification. If you'll take a look at a case like… Once you get past the data gathering step, where does the claim require the use of a computer, Claim 3? I think if you look at the specification, it describes a controller, it describes this being done… That may be an embodiment that uses that. It's not within the claim. I mean, your problem here is you've got a very broad claim. The claim is broad. I agree with that. But I think read in context, you have to understand that this is not really something that's performed using mental steps. If you look at a case like AT&T versus Excel, very similar in form. Why wouldn't somebody infringe this claim if they collected the information and then sat down and looked at it and used a paper and pencil to create this map of half a dozen transactions? Why wouldn't that infringe this claim? Your Honor, as I went back to the beginning, you have to start with a credit card transaction over the Internet. And that is not something that can be done by hand. And so we're doing a validity test. Well, let's suppose that we were to hold that that doesn't confer patent eligibility, the mere fact that the original transaction used the Internet. Let's put that aside. Let's take that out here. So why is it that the claim wouldn't cover doing this as a mental step? I think read in a vacuum, you might conclude that, but not read in light of the specification. And your reference to the specification is just that there are examples that are using the computer. Well, I think it's more than an example. So how to tell us what in the spec you think compels your result? The specification describes a controller. It describes a database. It describes software and processors for conducting these steps. I mentioned the AT&T versus Excel case, which I think is actually fairly similar. There you had a method that was done in the context of a telecommunications network. And the steps there included generating a message record and generating a preferred carrier indicator. And if you look at those steps, they don't say there's a computer involved either. But this court looked at it and said there was a machine involved. And, in fact, in the Comiskey case, cited specifically as saying that those claims were tied to a machine. They're very similar. Those steps couldn't be equal. We didn't conclude that the mere involvement of a machine in some of the claims made it patentable. Well, patent eligible, yes. No, we didn't say that either. We sent it back. AT&T versus Excel case? No, I'm talking about Comiskey. Well, Comiskey cited the AT&T versus Excel case as one that involved a transaction involving machine, which was a telecommunications network. And if you look at those steps, they could equally be performed by hand. The court recognized that these were things that were implemented and done with computers. What's the basis for saying they could equally be performed by hand? If you read them in a vacuum and just say, if you look at the step and say, well, this is something that somebody could do on pencil and paper. But that's not really what the invention's about. You have to look deeper than that. And I think that this invention, as I said, it's created by a problem because of having card-not-present transactions over the Internet. And it uses that IP address as a solution. And so it is tied intimately into Internet transactions over the Internet. And to suggest that it could be done by hand, well, if you read the claims in a vacuum, okay. But I don't really think that's what the invention is about. So suppose we were to say that Claim 3 doesn't claim patent-eligible subject matter. What about Claim 2, where essentially the results of Claim 3 are put on a computer-readable medium? Suppose in the Bilski case that this method of hedging, the claim had been written to say, creating this method of hedging, which isn't 101 eligible, and putting it on a computer-readable medium. That wouldn't have conferred 101 eligibility, would it? It could have. It could have. Really? Yes. These are different categories of subject matter. A manufacturer, which is a computer-readable medium, is something different than a method. And I would point the court to the recent Finjar case, which found computer-readable medium claims infringe, but not method claims. So there is a difference. In addition to that, it is something tangible to say there's a computer-readable medium. Computer software on a disk. It's been, I think, at least 15 years that the PTO has been allowing applications. Wouldn't it still be an abstract idea if it was simply because you took the abstract idea and put it on a computer-readable medium? Well, that makes it not abstract, doesn't it? That's what changes it into a different form. It makes it a computer-readable medium, a thing. And this is also where the machine or transformation test, to the extent it's useful as a clue, somewhat breaks down because things, whether it's a chemical composition or a light bulb, doesn't really necessarily meet the machine or transformation test. And so a computer-readable medium is something. It can be a disk. It can be a hard disk. It is a thing. And when you're talking about things, I don't think you're talking about abstract ideas. And just because there's an abstract idea embodied in the invention, there's nothing wrong with that. That goes back to Deere, the Arrhenius equation that was used. It was still a patentable method. Most great inventions do have an abstract idea in there somewhere. So if I take an abstract idea and I put it into Braille, that's a medium which is readable by a certain subset of the population. Does that turn it into patentable subject matter? No, I don't think so. And why is this different? You run into other problems. You run into a printed matter problem, for one thing, when you're talking about Braille. And these courts' cases, like In re Lowry, have said printed matter exception doesn't apply to computer-readable medium because they perform functions. The claim talks about computer-readable medium with program-executable code that does things. It has specific functions. So it's not simply looking at it and saying, oh, I can read it. It has one or more processors specifically recited in the claim that execute that code. So it's doing something. And that's different than just perceiving, such as in Braille. And that's why it's different. And the printed matter exception was held a number of years ago not to apply in this context. I think you also should realize, and I'm sure you do, that the PTO has been issuing computer-readable medium claims for about 15 years. But I don't think anybody's suggesting the fact that it's computer-readable makes it not eligible. But the converse isn't true. Not everything that's computer-readable is eligible. It certainly depends. If it was a book, I would agree with you. We're not talking about something that you could read. But if it has some functional relationship, and that's where the court's cases have been, if it has a functional relationship, meaning it does something, this computer-executable code actually performs these functions, that changes it into something different. And I think when I'm speaking generally... So if you took the Gottschalk invention and you added computer-readable medium to the first element of the Gottschalk claims, you'd be okay? You're getting on the border there. And because reading Benson or Gottschalk and Fluke, there is a line you can't cross. And I think it's when you come to what is essentially pure mathematics, which really is what Benson and Fluke approach. It's basically just a mathematical function. And if you said have a formula for calculating pi and you put it on a computer, I'm not sure that that would pass, much like calculating an alarm limit  But I will admit that that's a hard line to draw when you get to those things. But we're not even close to that here. We're not talking about an abstract mathematical function. We're talking about actual executable steps that include looking at this IP address, constructing a map, and then doing these various validity tests. It's nothing really like that. If I could go back to Claim 3, I do really think that the transaction over the Internet is an important part of it. It's not just a setting for the claim. It's not like we had a business method that was transported to the Internet. There's a reason this invention exists, and it uses the very fact that it takes place over the Internet with these IP addresses to solve the problem. I think this is one of those new technology inventions that really has to be given a different consideration. The steps are concrete enough that they shouldn't be classified as abstract. Very well. Thank you. We'll reserve the remainder of the time for rebuttal, and we'll hear from Mr. Bornstein. If it pleases the Court, my name is Scott Bornstein. I'm with Greenberg Traurig, representing Applee Retail Decisions. I'd like to first address some of the questions and responses that counsel gave to your inquiries a few moments ago. First of all, the Court asked the question, does the claim require the Internet? The answer is absolutely not. The Internet is an extra solution activity. It's in the preamble to define the scope of the claim, to define the general field of technology to which the method steps relate to. But it does not by any means require that the Internet is performed. And I think the best way to confirm that that's the fact is by simply looking at page 9 of CyberSource's moving brief. Specifically, if you look to the chart, or map as they may call it, on page 9, what you see is the three method steps, the core claim elements, are each performed by hand or in the form of a written chart on the paper. First, the claim requires that you obtain information about other transactions that have utilized an IP address. And you see that here listed. Transaction number 1, or T1, has the Internet address 111200. Second element requires constructing a map of credit card numbers based upon other transactions, bless you, based upon other transactions that have utilized the same IP address. And what you see in Council's chart on page 9 is transactions 2, 3, and 4, which each use the same IP address, but have different credit card numbers associated with those transactions. And finally, 3, using that map in an undetermined fashion to figure out whether the credit card transaction at issue was actually valid. And while the claim doesn't recite the specific step, the specific method of determining whether the credit card transaction was valid or not, you could see by looking on page 9 that you have four different credit card numbers associated with the same transaction, you have four different names of the credit card holders, and you have four different addresses, which could lead a credit card issuer to conclude that the transaction was not, or was fraudulent or not valid. So suppose that, as part of the claim, that included a computer, a specific computer algorithm, which could only be performed using a computer, a complex analysis of multiple transactions and parameters. Would that create subject matter eligibility? I would say no, Judge Dyke. The question is a little bit complicated. To the extent that the method could not be performed in the human mind, and I think we all know from the lack of a response from Council and from the district court's findings, this is a method that absolutely can be performed in the human mind. That would lead towards a finding of abstractness. On the other hand, simply adding a computer to a process that's otherwise… No, no, no, that's not my hypothetical. It's not simply adding a computer. It's specifying an algorithm which requires an analysis of multiple variables. I don't know what they might be. The patent doesn't tell us, but multiple variables, the sort of computation that could only be done by a computer and it gives this complex algorithm and incorporates it into the claim. Does that then take it out of the realm of the abstract or out of the realm of mental processes and make it patent eligible? In my view, adding an algorithm to an otherwise unpatentable claim, following the thinking of Fluke and Benson, would not transform the otherwise unpatentable invention into something patentable. That being said, I will acknowledge that to the extent that the claim could not be performed absent the use of that algorithm, there are certain circumstances where the claim could be… It's absent the use of a computer, I think, in Judge Dyke's hypothetical. You can correct me if I'm misapprehending. It's not absent the use of an algorithm. The algorithm is just sufficiently complex, as I understand the hypothetical, that it requires a computer. Understood. I think applying a known algorithm to an otherwise unpatentable process… No, no, it's not a known algorithm. The invention here is the algorithm. It's just so complex that it can only be realistically performed on a computer. If that's the case, if the invention was to an algorithm that was so complex it could only be performed on a computer, and if I can modify your hypothetical a bit, if the results there produce something… And I don't want to get into the tangible effect theory, but if the results are different, if it's not merely a compilation of data, but you're actually performing something that transforms a physical object or something that represents a physical object into a different state or thing, then I believe that claim could be patentable. I'm not sure if that answers your question, Judge Dyke. Not really. I'm sorry. I'm doing my best. Because I don't know what transformation means in this context. We're talking about something concrete and saying, okay, maybe these claims are so abstract that they're not patent-eligible, but if they really invented a particular way of analyzing transactions that required a complex algorithm which they came up with and that could only be done with a computer, it strikes me as difficult to argue that that wouldn't be patent-eligible. Given a frame like that, Judge Dyke, I would agree that could be patent-eligible. I think that's very far afield from what the claims, both Claim 3 and Claim 2 of the CyResource patent covers. But I would agree with you that given that scenario, it could be patent-eligible. The other things that counsel said and some of the questions you asked, which I'd like to address, we talked about whether or not a general-purpose computer would be sufficient, and counsel went to great lengths to try to indicate this was a computer-implemented invention. I think we talked a moment ago about the fact that this process, certainly the Claim 3 process, could be performed absent the use of a computer in the human mind. We also talked about Claim 2, the method of hedging the computer-readable medium was mentioned in the context of the Bilski decision. I think this is a claim, Claim 2 is a claim very, very similar to Bilski, and it's very similar to some of the precedent that we've seen from other courts. In Abiley, the court considered whether or not method Claim 1, when used with a computer in Claim 16, would otherwise be subject to the same one-on-one analysis. What the court concluded in Abiley was that simply adding a computer to an otherwise unpatentable method claim would not transform the subject matter and would not get it outside the scope of the one-on-one analysis. I think counsel's suggestion that simply adding the magic words computer-readable medium to an otherwise unpatentable claim could create a great deal of havoc. Nobody's suggesting, nor do we need to suggest, that the PTO should not issue claims to computer-readable media. However, the suggestion that simply because you add some undefined computer-readable media to the preamble of a claim could otherwise take it outside the scope of the traditional one-on-one abstractness analysis makes no sense. And I think, Judge Dyke, your question, whether or not you took the same Bilski claim and applied a computer-readable media to it would somehow render that method of hedging a risk patentable. I think the answer to that has to be no. We didn't talk at all about the machinery transformation test. And while we know we're living in a new world, in a sense, given the Bilski decision from the Supreme Court, the more things change, the more they stay the same. The reality is the machinery transformation test remains a viable and important clue to patentability. And as the District Court did, when you apply the machinery transformation test to either Claim 3 or Claim 2, what you result in is a claim which must be found unpatentable. The supposed machine that's been referenced, the Internet itself, is certainly not a specific machine. And as the Court's questioning pointed out, it's not required or tied to the specific implementations in the claims. With respect to the transformation prong of the machinery transformation test, there simply is no transformation. Counsel in its briefing and at the District Court suggested that the manipulation or collection of data could somehow satisfy the transformation prong. That suggestion is contrary to a number of prior cases and common sense, quite frankly. When you look, again, to page 9 of the appellant's brief, what you see is that the IP addresses simply don't change. They're collected, they're assembled, but they don't change. And likewise, the credit card information that's been collected regarding the transactions do not change. What you have is no transformation. The particular method steps from Claims 3 and 2 are not associated with a particular machine. And what you have, as the District Court correctly concluded, is an abstract intellectual concept that's composed of both three common core method steps in Claims 3 and 2. Thank you. Thank you. First, I'll address extra solution activity. That's not this. This invention is because of the Internet. It's intrinsic to the Internet, and whether or not you're just looking at the preamble, the body of the claim does require using the Internet address for the transaction. It's not simply extra solution activity. It's part and parcel of the invention. On the computer-readable medium claims, I think it's unfair to say you're just taking an abstract method and putting it in the computer-readable medium claims. We had a lot of questions about whether or not these steps could be done in the person's mind. Well, the computer-readable medium claims cannot. So you can't simply say Claim 3 is metal steps, and then when you put it in a computer-readable medium, it's no longer patentable because the metal steps doctrine goes away. And finally, I'd like to point out the RCT case recently said that abstractness, it's a tough concept, but it should be exhibited manifestly. I don't think that is this case. This is like in the RCT case. There are specific applications or improvements to existing technologies in the marketplace. That's what this invention is. And in those circumstances, it's unlikely to be abstract, and we say it's not. Thank you. I thank both counsel for cases submitted.